103 F.3d 132
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
YELLOW FREIGHT SYSTEM, INC., Petitioner,
v.
Robert REICH, Secretary of Labor, and Thomas E. Moyer, Respondents.
 No. 95-4135.
 United States Court of Appeals, Sixth Circuit.
 Dec. 16, 1996.
 
 On Petition for Review of A Final Decision and Order of the Secretary of Labor, No. 89-STA-9.
 DOL. [Appeal after remand from 954 F.2d 353].
 VACATED.
 Before: MARTIN, Chief Judge, and MERRITT and NELSON, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This case is before us--again--on a petition for review of a decision in which the Secretary of Labor held that the petitioner, Yellow Freight System, Inc., violated § 405(a) of the Surface Transportation Assistance Act of 1982 by discharging one of its drivers in retaliation for testimony he gave at a grievance proceeding initiated by another driver. The Secretary contends that the grievance proceeding was one "relating to a violation of a commercial motor vehicle safety rule" within the meaning of those words as used in § 405(a). Yellow Freight disagrees, contending that the grievance proceeding did not come within the statutory language.
 
 
 2
 At an earlier stage of this litigation the Secretary found a violation of § 405(a) without having given Yellow Freight adequate notice that this was the section the company was charged with having violated. Yellow Freight petitioned for review, and we remanded the case so that the Secretary could "re-examine the § 405(a) issue after giving Yellow Freight proper notice and a full and fair opportunity to respond." Yellow Freight System, Inc. v. Martin, 954 F.2d 353, 359 (6th Cir.1992). Yellow Freight received proper notice and an opportunity to respond on remand, of course, but the record, as we read it, contains no evidence on which the Secretary could properly have found that the grievance proceeding was in fact a safety-related proceeding of the type referred to in § 405(a). We shall therefore grant the petition for review and direct that the complaint be dismissed.
 
 
 3
 * Respondent Thomas E. Moyer, whose motion for leave to intervene as a party was granted by this court on December 20, 1995, worked for Yellow Freight as a truckdriver over a 10-year period that began in 1978. Yellow Freight terminated Mr. Moyer's employment on November 9, 1988.
 
 
 4
 Moyer claims that he was discharged for testifying at hearings on a grievance filed by a fellow employee, Robert Eric Lee. Section 405(a) of the Surface Transportation Assistance Act, 49 U.S.C.App. § 2305(a), prohibits anyone from discharging an employee because of his having testified in "any proceeding relating to a violation of a commercial motor vehicle safety rule, regulation, standard, or order...." The threshold question before the Secretary was whether the grievance proceeding initiated by Mr. Lee was what we referred to in Martin as one "based upon possible safety violations." 954 F.2d at 357.
 
 
 5
 Mr. Lee filed his grievance after Yellow Freight discharged him for failing to provide medical substantiation of an illness that he said had kept him off work. Under procedures established pursuant to a collective bargaining agreement, drivers who become ill must personally advise Yellow Freight of their illness and place themselves on inactive status. (In common parlance, a driver who takes this step is said to have put himself on the "sick board.") Only the affected driver may take himself off the sick board, and Yellow Freight cannot order him to do so. If a driver has missed more than 72 hours, moreover, the company's work rules require that he present a written release from his doctor before he can return to work.
 
 
 6
 Where the driver has been on the sick board for an extended time, it is Yellow Freight's practice to issue a letter requesting medical documentation of the illness. The company follows this practice, according to the testimony of one of its line haul operations managers, because "[w]e have found in the past that some people who were on the sick board were actually working for other companies...."
 
 
 7
 Mr. Lee placed himself on the sick board on June 22, 1988. He had not returned to work by the following August, and Yellow Freight sent him a form letter on August 2, 1988, asking him to produce "medical substantiation" within 72 hours. If such substantiation were not forthcoming, the letter said, "your voluntary resignation will be accepted." The letter did not ask Mr. Lee to report for work, and Mr. Lee testified that he saw nothing on the face of the letter asking him to do so.[1]
 
 
 8
 Mr. Lee failed to provide the company a doctor's note in response to the August 2 letter, and his employment was terminated on August 14, 1988. As he was entitled to do under the collective bargaining agreement, Lee submitted a grievance over the discharge.
 
 
 9
 A "company-level" grievance hearing was held on September 28, 1988, and a "state-level" hearing was held one week later. No stenographic or other verbatim record was made at either hearing. Mr. Moyer--who had been sharing living accommodations with Mr. Lee and had telephoned Yellow Freight to advise the company of Lee's condition--testified for the grievant at the September 28 hearing. (There is a conflict in the evidence as to whether he also testified at the October 5 hearing--Moyer said he did, and Lee said he did not.)
 
 
 10
 As we have seen, Mr. Moyer himself was discharged in November. He then filed a complaint with the Secretary of Labor alleging that his discharge violated the Surface Transportation Assistance Act in various respects. The complaint did not refer in any way to Mr. Lee's grievance proceeding or to Mr. Moyer's role in it. Mr. Moyer's involvement in the grievance proceeding surfaced, however, during the course of Moyer's testimony at an evidentiary hearing conducted before one of the Labor Department's administrative law judges.
 
 
 11
 The ALJ recommended dismissal of Mr. Moyer's complaint, concluding, among other things, that Moyer had failed to present a prima facie case of retaliatory discharge in violation of the statute. The Secretary of Labor disagreed on this point, believing--erroneously, as the ALJ subsequently pointed out--that the purpose of the grievance hearings was to determine Mr. Lee's fitness to return to work.[2]
 
 
 12
 In proceedings conducted following this court's remand, the ALJ took extensive evidence on the precise nature of Mr. Lee's grievance hearings. The ALJ then issued a recommended decision and order in which he found as a fact that the purpose of the grievance hearings was to determine whether Mr. Lee had or had not provided medical documentation for his absence. The ALJ explicitly found that the grievance hearings had no other purpose and were not designed to determine Lee's fitness for driving a motor vehicle. "Since fitness for duty was not an issue in the [grievance] proceeding," the ALJ concluded, "it [the grievance proceeding] did not involve or relate to safety."
 
 
 13
 Again the Secretary of Labor disagreed. On review of the ALJ's recommended decision and order, the Secretary reached the following conclusions, among others:
 
 
 14
 "Moyer and Lee essentially challenged the standards of proof employed by Yellow [Freight] for determining whether drivers may remain on the sick board or refuse work when ill or fatigued. If such standards are unreasonably strict, drivers who do not anticipate being able to provide the requisite verification, but who nonetheless are ill or fatigued, may feel compelled to continue to work.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 "As stated previously by the Secretary and quoted by the reviewing court, a 'violation [of DOT regulations] need not comprise the only or even the predominant subject of the proceeding.' " Yellow Freight System, Inc. v. Martin, 954 F.2d at 356. Rather, a proceeding 'relating to' a safety violation is merely one in which information about safety is disclosed.
 
 
 18
 "Accordingly, I find that Lee's grievance hearing, in which he and Moyer complained about Yellow's standards of proof of a driver's inability to operate a motor vehicle safely, was sufficiently related to possible safety violations to afford Moyer protection for his participation."
 
 
 19
 The Secretary further concluded that Mr. Moyer's discharge had resulted from his participation in the grievance proceeding. Yellow Freight was ordered to offer reinstatement, and the case was returned to the ALJ for a recommendation with respect to additional relief. A new ALJ recommended a substantial award of back pay, interest, and attorney fees, and the Secretary accepted this recommendation with some modifications. The present petition for review followed.
 
 II
 
 20
 The Secretary could not find a violation of § 405(a) in this case, as we have seen, without finding that the grievance proceeding at which Mr. Moyer testified was one "relating to a violation of a commercial motor vehicle safety rule...." 49 U.S.C.App. § 2305(a). The particular safety rule to which the Secretary found the grievance proceeding related is codified at 49 C.F.R. § 392.3. In pertinent part, the rule says this:
 
 
 21
 "No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle."
 
 
 22
 The Secretary's theory as to how Mr. Lee's grievance proceeding can be characterized as one "relating" to a violation of 49 C.F.R. § 392.3 runs along these lines, as we understand it. (1) In requiring drivers who have placed themselves on the sick board to furnish medical substantiation of their illness, Yellow Freight increases the pressure on such drivers to return to work before it is safe for them to do so. (2) In their testimony at the grievance proceeding, Messrs. Moyer and Lee challenged the medical substantiation requirement as being unreasonably strict. (3) Whatever the true purpose of the grievance proceeding may have been, the nature of the challenge presented by Moyer and Lee turned the proceeding into one relating to a possible safety violation.
 
 
 23
 The Secretary's theory rests on assumptions of fact that are simply not supported by the record of the evidentiary hearing, considered as a whole. The Secretary's assumptions are inconsistent, moreover, with well-supported findings of fact made by the ALJ who conducted the hearing.
 
 
 24
 In the first place, there is no substantial evidence that the letter sent to Mr. Lee by Yellow Freight on August 2, 1988, put pressure on him to return to work before he was medically fit to do so. It is uncontroverted that Mr. Lee had been on the sick board for more than 72 hours, and the ALJ found as a fact that it would therefore have been contrary to company policy to allow him to return to work without clearance from a doctor. Under the Secretary's own regulations, the ALJ's finding--a finding that is unquestionably supported by substantial evidence in the record considered as a whole--must be treated as "conclusive." See 29 C.F.R. § 1978.109(c)(3).
 
 
 25
 In the second place, the record contains no evidence showing that the medical substantiation requirement was challenged at the grievance proceeding. On the contrary, the record shows that Mr. Moyer had been cautioned by a union representative to confine his presentation to an explanation of how sick Mr. Lee really was. That is what Mr. Moyer did. It is true that Mr. Moyer expressed the opinion that Mr. Lee was too sick to drive a truck, but his purpose in doing so, as the ALJ expressly found, "was to substantiate Lee's illness."
 
 
 26
 Mr. Lee did not testify in person before the ALJ. A Yellow Freight lawyer took Lee's deposition, however, and a transcript of the deposition was admitted into the record of the administrative proceeding. The deposition testimony is devoid of any suggestion that Mr. Lee or anyone else who appeared at the grievance hearings challenged the medical substantiation requirement as being too strict. The thrust of the presentation made before the grievance committees, rather, was that the substantiation requirement had been met.
 
 
 27
 What the grievance committees were told, according to the deposition testimony, was that Mr. Lee was suffering from a serious back problem and was taking medication to relieve his muscle spasms; that following receipt of the August 2 letter, Mr. Moyer telephoned Yellow Freight and explained the nature of Mr. Lee's problem; and that Mr. Moyer undertook to give one of Mr. Lee's medicine bottles to Yellow Freight. Mr. Lee testified that he himself passed around his medication bottles at the grievance hearings. A Yellow Freight representative argued that there had not been sufficient substantiation, however, and the grievance committees agreed with Yellow Freight. Again, the Lee deposition gives no indication whatever that Mr. Lee was challenging the substantiation requirement or arguing that it led to possible safety violations.
 
 
 28
 Finally, we are not persuaded by the Secretary's argument that the purpose of the grievance proceeding made no difference in light of the grievant's safety-related challenge to the medical substantiation requirement. The argument fails on its own terms, given the fact that there was a complete failure of proof as to the supposed challenge. On the record that was developed to show what actually transpired at the grievance hearings, we believe it is clear as a matter of law that any relationship between the grievance proceeding and a possible safety rule violation was far too attenuated to trigger the protections of § 405(a).
 
 
 29
 Under the Administrative Procedure Act, the provisions of which govern our review of the Secretary's orders (see 49 U.S.C.App. § 2305(d)(1)), we are directed to "hold unlawful and set aside agency actions, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] unsupported by substantial evidence...." 5 U.S.C. §§ 706(2)(A) and (E). Under these standards, we are satisfied that the decisions and orders that are the subjects of Yellow Freight's petition for review must be held unlawful and set aside.
 
 
 30
 The petition for review is GRANTED, the decisions and orders entered by the Secretary in Case No. 89-STA-7 on October 21, 1993, and August 21, 1995, are VACATED, and the Secretary is directed to DISMISS respondent Moyer's complaint with prejudice.
 
 
 
 [1]
 Mr. Lee had received a similar letter from Yellow Freight while off work in June of 1985. He responded to the 1985 letter by providing a doctor's verification of his illness, thereby avoiding termination of his employment
 
 
 [2]
 As quoted in Martin, 954 F.2d at 356, the Secretary's decision said that Yellow Freight directed Lee to report to work. The Secretary was mistaken in this; Yellow Freight did not direct Lee to report to work